UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAWFIK ABDO SALEH AHMED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO MAYORKAS, et al., <br><br> Defendants. | No. CV 23-4807 PA (ASx) <br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |

Plaintiffs Tawfik Abdo Saleh Ahmed ("Tawfik Ahmed"), Fatima Kassim Ali ("Fatima" or "Ms. Ali"), Kassim Faisal Muthana ("Kassim"), and minor S.F.M. (collectively "Plaintiffs") commenced this action on June 19, 2023. Plaintiffs' Complaint alleges a claim pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. The Complaint also asserts constitutional claims for violations of Plaintiffs' rights under the Equal Protection Clause and the Due Process Clause of the Fifth Amendment. The Complaint names as defendants Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS"); DHS; United States Citizenship and Immigration Services ("USCIS"); Ur Jaddou, Director of USCIS; USCIS California Service Center; Kathy Baran, Director of USCIS' California Service Center; Antony Blinken, Secretary of State; and Djibouti U.S. Embassy (collectively "Defendants").

Consistent with the Court's procedures, the Defendants filed the Certified Administrative Record ("CAR"), and the parties filed their Opening Trial Briefs, their respective proposed Findings of Fact and Conclusions of Law, and their objections to each other's proposed Findings of Fact and Conclusions of Law.

The Court now makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).  Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

I.      **Findings of Fact**

1.      Plaintiffs' Complaint alleges a claim pursuant to the Administrative Procedure Act, 5 U.S.C. § 702. ("APA"). Specifically, Plaintiffs challenge USCIS' denial of the Petitions for family-based immigrant visas of which they are the intended beneficiaries ("I-130 Petitions"). The Complaint also asserts constitutional claims for violations of Plaintiffs' rights under the Equal Protection Clause and the Due Process Clause of the Fifth Amendment, and seeks declaratory and injunctive relief for those claims.

2.      Defendants have filed their Certified Administrative Record ("CAR"), in four parts, providing all the materials that were considered in USCIS' decisions to deny the petitions for alien relative for each of the Plaintiffs-beneficiaries (Dkt ## 22-24) and materials that were considered in the creation of USCIS Policy Memorandum PM-602-0064, the Supplemental Guidance for Adjudicating Family-Based Petitions Supported by Relationship Documents Actually or Purportedly Issued by a Civil Authority in Yemen; Revision to the Adjudicator's Field Manual (AFM) Chapter 21 (the "Yemeni Guidance") (Dkt # 25-1).

3.      In their Complaint in this action, filed on June 19, 2023, Plaintiffs admit that "[a]t all relevant times, the adjudication of Plaintiffs' and all other Yemeni I-130 petitions was governed by the procedures, processes and standard established in [the Yemeni Guidance]." Dkt # 1 ¶¶17, 214].

4. The deceased Petitioner Faisal Abdulla Muthana ("Petitioner") was born in Yemen in 1965. CAR 22-1 at 227. He resided in the United States since 1992 and was naturalized on March 28, 2019. Id. at 239; Dkt # 23-2 at 78, 89.

5. On March 7, 2018, Petitioner filed a petition for alien relative (Form I-130) on behalf of Plaintiff Fatima Kassim Ali, a national and resident of Yemen, who he allegedly married on June 20, 1995. Id. at 227-28.

6. In support of the Petition, Petitioner submitted the translation of a marriage certificate that was registered in Yemen several years after the alleged 1995 ceremony. Id. at 209.

7. Allegedly Ms. Ali was previously married to another man, Abdo Saleh Ahmed, whose death in 1992 was not reported until the year 2020. Id. at 7, 199.[1]

8. Petitioner is now deceased. See Exhibit B to Complaint.

9. On December 30, 2019, USCIS issued to Petitioner a request for further evidence ("RFE") to establish that his marriage to Ms. Ali was bona fide. See id. at 18. The RFE requested, inter alia, copies of their correspondence prior to their alleged marriage, as well as correspondence establishing that they maintained their relationship thereafter. Id.

10. Petitioner did not provide any such correspondence in response to the RFE, despite claiming that that he and Ms. Ali had communicated through WhatsApp, Viber, and other apps. Id. at 3-4. 24.

11. Although Petitioner was able to provide birth certificates for children he claims were born of the marriage, two of these birth certificates reflected a delayed registration date. Id. at 5.

---

[1] The substitute petitioner in this case, Plaintiff Tawfik Abdo Saleh Ahmed, was born in 1991 (Dkt # 22-1 at 237 and bears the name of Plaintiff Fatima Ali's first husband, Abdo Saleh Ahmed (Dkt # 22-1 at 231). See also (Dkt # 22-1 at 6, 24, 26, 186, 202) (showing Tawfik Ahmed's status as Petitioner's stepson). However, Plaintiffs, in their Opening Trial Brief, claimed that Tawfik Ahmed was the son of Ms. Ali and the Petitioner, and not the son of her first husband Mr. Ahmed (Dkt # 38 at page 28 of 38). Plaintiffs have not explained this concerning inconsistency.

-3-

12. Petitioner also claimed that he paid $175 on a regular basis to Ms. Ali and that he used Western Union to transfer the funds. Id. at 24, 29. Once again, however, he was unable to produce documentation of any such money transfers or any other evidence of joint financial assets. Id. at 2, 6, 24.

13. With respect to the 10-year delay in the registry of the death of Ms. Ali's alleged first husband, Abdo Saleh Ahmed, (Id. at 200), Petitioner himself admitted to USCIS that "Yemen has been known for its weak governmental documentation of birth, [m]arriage and death certificates" (citing the Department of State's warning that "[d]ates in these [Yemeni] documents are always suspect. At best, they are only as good as the memory or written records of the informant. At worst, the information in these documents can be completely false."). Dkt # 221 at 27.

14. On July 6, 2020, USCIS denied the petition for the marriage-based visa because the evidence Petitioner provided, reviewed in its totality, was insufficient to satisfy the Petitioner's burden to establish a bona fide, good faith marriage with the intent to create a shared life together, and/or that Ms. Ali was even free to marry Petitioner. Id. at 2-8.

15. On March 23, 2018, Petitioner submitted a form I-130 petition for the benefit of Plaintiff Kassim Muthana ("Kassim"), a citizen and resident of Yemen, as his alleged son. Dkt # 23-2 at 75.

16. In connection with the petition for a family-based visa for Kassim, on December 30, 2019, USCIS issued a RFE for secondary evidence because the birth certificate that was submitted was not contemporaneous with his date of birth. Dkt # 23-1 at 13.

17. With respect to the Petition for Kassim, USCIS requested that Petitioner produce such secondary evidence as governmental, medical, religious, school, financial, employment, insurance or residential records that reflected the names of both Kassim and Petitioner, family photographs with notations indicating the persons photographed, as well as the date and place they were taken, and correspondence referring to Petitioner and Kassim, and an explanation of the reason why the birth certificate was not

contemporaneously registered, and any evidence that the civil authorities independently corroborated the biological relationship between Petitioner and Kassim. Id. at 14.

18. The RFE for the Petition for Kassim also encouraged voluntary DNA testing to establish the biological relationship between Kassim and Petitioner. Id.

19. The RFE also permitted Petitioner to submit two or more affidavits of non-parties with knowledge of Kassim's birth, but USCIS advised that, without the above secondary evidence, such affidavits would be accorded only minimal weight. Id.

20. Petitioner did not produce correspondence or photographs in response to the RFE, but produced purported copies of Kassim's undated vaccination card and several school certificates, which documents listed only Kassim's name and did not have a separate notation indicating the names of the parents. Id. at 21-50.

21. The school records Petitioner provided listed Kassim's name as "Kassim Faisal Abdulla Abdulhai," not Kassim Muthana. Id.

22. In addition, Petitioner did not provide any evidence as to the reason for the delay in registering Kassim's birth, or any evidence that the civil authorities in Yemen ever corroborated the biological relationship between Petitioner and Kassim as requested in the RFE. Id. at 4. 5.

23. Petitioner also submitted an affidavit of his business partner, Mohamed Daiban, who allegedly witnessed the birth of Kassim, but as noted above, without the requested secondary evidence, this affidavit could only be accorded minimal probative weight. Id. at 4, 15.

24. The Petition for Kassim's visa was denied on June 30, 2020. USCIS noted the paucity of secondary evidence submitted in response to the RFE and noted that Kassim's birth certificate was not contemporaneous with his birth, and, as such, was accorded less weight than one that was timely registered. Id. at 2.

25. USCIS' decision also noted that Petitioner was encouraged to submit DNA testing but Petitioner did not provide any evidence that DNA testing had been initiated. Id.

1  at 3.  Thus, there was no reason to delay issuing the decision to await the results of such
2  testing.
3        26.    With respect to Kassim's vaccination card, USCIS found that because the card
4  did not show Petitioner's name or any evidence of parentage, it was insufficient evidence of
5  the claimed biological relationship.  Id. at 3.
6        27.    As to Kassim's school records, USCIS explained that because, inter alia, the
7  records did not show Petitioner's name, and because it was unclear if the records were
8  issued at or near the time of attendance, these records did not establish parentage.  Id.
9        28.    USCIS also considered the affidavit of Petitioner's business partner, who
10 claimed to have witnessed Kassim's birth, but because no additional evidence was submitted
11 to corroborate the affiant's claims, his affidavit was given low weight.  Id.
12       29.    On March 5, 2018, Petitioner filed a form I-130 petition for alien relative for
13 the benefit of Plaintiff SFM, a minor and citizen/resident of Yemen, as his alleged daughter.
14 Dkt # 24-2 at 62-70.
15       30.    On March 24, 2020, USCIS issued a RFE requesting such secondary evidence
16 as governmental, medical, religious, school, financial, employment, insurance or residential
17 records that reflected the names of both SFM and Petitioner, family photographs with
18 notations indicating the persons photographed, as well as the date and place they were taken,
19 and correspondence referring to Petitioner and SFM, and any evidence the civil authorities
20 independently corroborated the biological relationship between Petitioner and SFM.  Dkt #
21 24-1 at 11.  The RFE also encouraged voluntary DNA testing to establish the biological
22 relationship between the two.  Dkt # 24-1 at 10-12.
23       31.    Petitioner did not produce any of the requested photographs or
24 correspondence, and did not produce any evidence that the Yemeni civil authorities
25 independently corroborated any biological relationship between Petitioner and Plaintiff
26 SFM.  Id. at 14-48.
27       32.    In response to the RFE, Petitioner provided copies of SFM's vaccination card
28 and undated school certificates, but these documents listed only SFM's name and did not

have a separate notation indicating the names of the parents. Id. at 18-46. Again, no correspondence or photographic evidence of a father-daughter relationship was submitted by Petitioner. Id. at 14-48.

33. Petitioner also submitted the affidavit of his business partner Mohamed Daiban, who allegedly also witnessed the birth of SFM, but again, without the above secondary corroborative evidence, the affidavit was only accorded minimal probative weight. Id. at 11.

34. The SFM Petition was denied on June 30, 2020 on the grounds that while USCIS considered SFM's birth certificate, pursuant to the Department of States' Foreign Affairs Manual, Yemeni birth certificates are unreliable and therefore should be supported by the oldest available secondary evidence that Petitioner was the father of SFM. Id. at 2.

35. Furthermore, USCIS' denial letter reflects that USCIS considered the proffered vaccination card and school records of SFM but because they lacked Petitioner's name, and the school records did not contain a date of issue or any independent verification of SFM's biological parentage by the school, this evidence was not considered sufficient. Id. at 3.

36. The Yemeni Guidance, issued on May 28, 2012, during the Obama Administration, states that civil documents issued in Yemen to establish claimed familial relationships, such as marriage certificates, birth certificates and death certificates, are generally based on information furnished by an interested party. Dkt # 25-1 at 1 (citing Department of State Yemen Reciprocity Schedule).

37. The Yemeni Guidance also states that "the use of Yemeni civil documents in the verification of familial relationships created in Yemen pose fraud and U.S. national security concerns." Id. at 4.

38. Indeed, the Department of State has recommended that such Yemeni documents should be given no more weight than affidavits if presented in support of a relationship claim. Id.

39. Nevertheless, the Yemeni Guidance emphasizes that each case must be decided individually based on the evidence of record. Id. at 12.

40. Appendix A to the Yemeni Guidance also states that most Yemenis do not register births, marriages, divorces, or deaths when they occur. Id. at 19. If there is a need for such civil records, Yemenis generally prepare "court judgments." Id. at 19, 40. Information in these documents is often based on the testimony of an informant or their proxy, and witnesses who may or may not have direct knowledge of the events about which they testify. Id.

41. Thus, dates in these Yemeni documents are suspect and the Yemeni courts make no attempt to independently verify the testimony of the informants and witnesses. Id. Therefore, USCIS gives such court judgments no more weight than affidavits if presented in support of a relationship claim. Id.

42. Pursuant to the Yemeni Guidance, USCIS cannot deny a visa petition due to the failure to provide DNA samples and the failure to do so is not considered a derogatory factor. Dkt # 25-1 at 3, 5.

43. In 2021, American consulates and embassies abroad experienced delays in the collection of DNA evidence. See Mulhi v. Mayorkas, 2023 WL 1967892 at * 5 (E.D. Mich. Feb. 13, 2023); https://www.uscis.gov/archive/uscis-response-to-covid-19.

## II. Conclusions of Law

1. Under the APA, a court shall hold unlawful and set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court is not empowered by the APA to substitute its judgment for that of the agency. See Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).

2. Under APA review, the agency's factual findings are reviewed for substantial evidence, and the Court will not disturb the agency's findings unless the evidence presented would compel a reasonable finder of fact to reach a contrary result. See Alarcon-Serrano v. INS, 220 F.3d 1116, 1119 (9th Cir. 2000). Substantial evidence is more than a mere scintilla

but less than a preponderance of evidence and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Turcios v. INS, 821 F.2d 1396, 1398 (9th Cir. 1987) (internal citation omitted). Even if it could be argued that the evidence is susceptible of more than one rational interpretation, the Court must affirm the agency's determination. See San Luis & Delta-Mendoza Authority v. Jewell, 747 F.3d 581, 601 (9th Cir. 2014) (citation omitted).

3. In visa petition proceedings, the petitioner has the burden of establishing eligibility for the benefits sought. See 8 U.S.C. § 1361; Matter of Brantigan, 11 I & N Dec. 493 (BIA 1966). Furthermore, non-contemporaneous records are not entitled to conclusive weight. See In re Bueno-Almonte, 21 I & N Dec. 1029, 1033 (BIA 1997). Here, the Petitioner's evidence does not compel the conclusion that the alleged marriage between Petitioner and Ms. Ali was bona fide.

4. Petitioner also failed to meet his burden of establishing paternity for Kassim and SFM. See Matter of Ho, 19 I & N Dec. 582, 592 (BIA 1988) (it is incumbent on the petitioner to resolve any inconsistencies in the record by independent objective evidence). Therefore, the Court will not substitute its judgment for that of USCIS. See Nw. Motorcycle Ass'n, 18 F.3d at 1471.

5. Neither the Ninth Circuit, nor the Supreme Court, has definitively stated the proper standard of scrutiny in every immigration context. See United States v. Carrillo-Lopez, 68 F4th 1133, 1142 (9th Cir. 2023). However, in Trump v. Hawaii, 585 U.S. 667, 704 (2018), the Court indicated that the proper standard of scrutiny, in cases concerning the entry of foreign nationals, should be rational basis review. Under this deferential standard, a federal policy survives an equal protection challenge if there is a rational relationship between a disparity in treatment and some legitimate governmental purpose." United States v. Ayala-Bello, 995 F.3d 710, 715 (9th Cir. 2021) (citation omitted); Ursack, Inc. v. Sierra Interagency Black Bear Group, 639 F.3d 949, 958 (9th Cir. 2011) (the rational basis standard is analogous to the "arbitrary and capricious" standard under the APA).

6. To the extent that Plaintiffs allege that their petitions were subject to a higher scrutiny because they are from Yemen, as even Petitioner admitted, Yemeni civil records are particularly susceptible to error and fraud. See Alamakalani v. McAleenan, 527 F. Supp. 3d 205, 217 219-20 (E.D.N.Y. 2021). Thus, the Court finds that there was a rational relationship between the Yemeni Guidance and the legitimate government purpose of maintaining the immigration system and securing against fraud. Id. (finding Yemeni Guidance to be rational).

7. USCIS had discretion to determine what evidence was credible and what weight should be given to that evidence. See 8 C.F.R. 204.1(f)(1)). Accordingly, USCIS' reliance on the Yemeni Guidance was not contrary to law. See Almakalani, 527 F. Supp. 3d at 220.

8. With respect to Plaintiffs' due process challenge, after Petitioner responded to the RFEs, "USCIS nonetheless denied those petitions, the agency listed each piece of additional evidence and explained pieced-by-piece why that evidence failed to meet [his] burden." Thus, Petitioner received all the process to which he was due. See Abdulla v. Cuccinelli, 840 F. App'x 827, 840 (6th Cir. 2020).

9. To the extent Plaintiffs argue that the delay in collecting DNA was somehow a violation of the APA, there is no evidence in the record that the decision to suspend DNA collections during the peak of the COVID-19 pandemic was in any way arbitrary or capricious. See Mulhi 2023 WL 1967892 at * 5.

10. Accordingly, the Court finds in favor of the Defendants and denies Plaintiffs any relief. The Court will issue a Judgment consistent with these Findings of Fact and Conclusions of Law.

IT IS SO ORDERED.

DATED: September 25, 2024

                                                                 Percy Anderson
                                                           UNITED STATES DISTRICT JUDGE